NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-3693-15T2

STATE OF NEW JERSEY,

 Plaintiff-Respondent,

v.

MELVIN Q. ROUSE,

 Defendant-Appellant.
______________________________

 Submitted September 14, 2017 – Decided October 3, 2017

 Before Judges Alvarez and Nugent.

 On appeal from the Superior Court of New
 Jersey, Law Division, Hudson County, Docket
 No. 14-08-1402.

 Joseph E. Krakora, Public Defender,
 attorney for appellant (Rebecca Gindi,
 Assistant Deputy Public Defender, of
 counsel and on the brief).

 Esther Suarez, Hudson County Prosecutor,
 attorney for respondent (Kerry J. Salkin,
 Assistant Prosecutor, on the brief).

 PER CURIAM

 Defendant Melvin Q. Rouse entered a guilty plea to an

 amended charge of second-degree robbery, N.J.S.A. 2C:15-1, after

 his motion to suppress an out-of-court identification was
 denied. On March 11, 2016, the trial court sentenced him to

 five years of drug court probation and imposed appropriate fines,

 penalties, and assessments. Defendant now appeals, alleging

 that the victim's show-up identification was impermissibly

 suggestive and unreliable. We affirm.

 While in Jersey City, Peter Vincent was robbed on May 8,

 2014. One of the assailants, wielding a tire iron, struck him

 on the head, causing injury. Earlier that night, Susan Wecht

 had been robbed in a similar fashion in the same area. The

 perpetrators were seen traveling in a black truck, with an

 attached rear bicycle rack.

 Detective Mark D'Ambrosio testified at the Wade1 hearing

 that an ambulance transported Vincent to a location where six

 occupants of a truck similar to that described by the victims

 had been detained within minutes of the second robbery. A third

 person, not Wecht or Vincent, identified the vehicle, but not

 the occupants. D'Ambrosio stated that the show-ups were

 illuminated by a street light and a police vehicle overhead

 light.

 Vincent remained in the ambulance while shown the six

 suspects, including defendant, from a distance of about

1
 United States v. Wade, 388 U.S. 218, 87 S. Ct. 1926, 18 L. Ed.
2d 1149 (1967).

 2 A-3693-15T2
seventeen feet. Vincent is Caucasian, while the occupants of

the vehicle are African-American.

 Before the show up, D'Ambrosio told Vincent that the persons

he would be seeing "may or may not" be the perpetrators.

D'Ambrosio completed a "Show-Up Identification Procedures

Worksheet" only for the three persons Vincent identified,

including defendant, and not for the three persons Vincent did

not recognize. D'Ambrosio did not recall asking Vincent while

at the scene about his level of confidence, although he

remembered that Vincent's positive identifications were made

within seconds of seeing the suspects.

 D'Ambrosio witnessed Wecht's similar identification

process. She was seated in the rear of a police car

approximately ninety to one hundred feet from the ambulance, and

only identified a female perpetrator. The two victims had no

contact with each other. Given the angle of the ambulance,

D'Ambrosio did not believe it was possible for Vincent to have

seen Wecht identify anyone.

 After the show-up, Vincent received medical attention at a

hospital emergency room, including stitches to close his head

wound. Approximately two hours later, he was taken to the police

station where D'Ambrosio videotaped his statement and showed him

 3 A-3693-15T2
two tire irons. During the interview, Vincent said he was one-

hundred percent confident in his identifications.

 One of defendant's investigators testified that he also

interviewed Vincent. His notes indicated that Vincent stated

he could not recognize the suspect's facial features because of

the poor lighting conditions, and that only three persons were

shown to him, not all six occupants of the vehicle. Vincent

said police brought "them all out[,]" which the investigator

interpreted as meaning that the suspects were shown to Vincent

as a group, not individually.

 The judge found D'Ambrosio credible. Accounting for system

and estimator variables as defined in State v. Henderson, 208

N.J. 208, 248-72 (2011), he also found the identification to be

reliable. The judge further opined that D'Ambrosio's

documentation sufficiently complied with the Attorney General

Guidelines as well as Rule 3:11. See Office of the Attorney

Gen., N.J. Dep't of Law and Pub. Safety, Attorney Gen. Guidelines

for Preparing and Conducting Photo and Live Lineup

Identification Procedures 1 (2001). Therefore, he held that

defendant failed to meet his burden to demonstrate that there

was a very substantial likelihood of irreparable injury and

denied the motion.

 On appeal, defendant raises the following points:

 4 A-3693-15T2
 POINT I

 THE STATE FAILED TO PROVIDE THE COURT WITH
 EVIDENCE NECESSARY TO DETERMINE RELIABILITY
 BECAUSE THE OFFICER WHO CONDUCTED THE SHOW-UP
 IDENTIFICATION FAILED TO RECORD ANY OF THE
 SALIENT DETAILS OF THE IDENTIFICATION IN
 VIOLATION OF DELGADO, RULE 3:11 AND THE
 ATTORNEY GENERAL'S GUIDELINES. AS A RESULT,
 THE IDENTIFICATION SHOULD BE SUPPRESSED. [ ]

 POINT II

 ALTERNATIVELY, THE COURT ERRED BY DENYING THE
 MOTION TO SUPPRESS THE IDENTIFICATION BECAUSE
 THE OUT-OF-COURT IDENTIFICATION PRESENTED A
 VERY SUBSTANTIAL LIKELIHOOD OF IRREPARABLE
 MISIDENTIFICATION. [ ]

 A. The Court's Decision Not To Suppress
 The Identification Was Based On Factual
 Findings Unsupported By The Record.

 B. P.V.'s Out-of-Court Identification
 Was Tainted by a Number of Estimator
 Variables Casting Substantial Doubt Upon
 the Reliability of His Identification of
 Mr. Rouse.

 We defer to the trial court's findings of fact, so long as

they are supported by sufficient credible evidence in the record.

State v. Johnson, 42 N.J. 146, 162 (1964). We also defer to the

trial court's credibility findings. State v. Cerefice, 335 N.J.

Super. 374, 383 (App. Div. 2000).

 In Delgado, the Court required law enforcement officers to

create "a written record detailing the out-of-court

identification procedure," as well as a written record of "the

 5 A-3693-15T2
dialogue between the witness and the interlocutor, and the

results." State v. Delgado, 188 N.J. 48, 63 (2006). After

Delgado, Rule 3:11 was adopted, which made admissibility of an

out-of-court identification contingent upon the existence of a

written record of the identification procedure. R. 3:11(a).

The rule specifies the details to be documented, including the

"dialogue between the witness and the officer," and the "witness'

statement of confidence." R. 3:11(c); Accord Guidelines, supra,

N.J. Dep't of Law and Pub. Safety at 6.

 Only after a Wade hearing can a court determine from the

totality of the circumstances if a legitimately challenged

identification is nonetheless reliable and admissible.

Henderson, supra, 208 N.J. at 238-39. Contrary to defendant's

contention on appeal, however, the State did provide adequate

evidence establishing the reliability of the identification.

 Here, a sufficient written record was created of the salient

details of the show-up as required by Delgado, Rule 3:11, and

the Attorney General Guidelines. D'Ambrosio's recall of the

circumstances was imperfect, but the judge found him to be a

credible witness.

 Vincent identified the suspects approximately ten to forty

minutes after the incident, well within Henderson's two-hour

timeline, which has the acknowledged "benefit of fresh memory."

 6 A-3693-15T2
Supra, 208 N.J. at 259. D'Ambrosio told Vincent that the persons

he was going to be shown "may or may not" be the culprits. This

too contributes to the identification's reliability. See

Henderson, supra, 208 N.J. at 261. Although Wecht and Vincent

were shown the suspects while ninety-five to one-hundred feet

from each other, they had no contact, could not hear each other,

and Vincent had no sight line to Wecht's identification. We

therefore agree with the trial court that the combination of

D'Ambrosio's testimony and his written reports adequately

established reliability. The out-of-court identification was

properly ruled admissible.

 Defendant also contends that the judge made factual

findings unsupported by the record. We do not agree.

 D'Ambrosio testified that Vincent was shown the suspects

one-by-one, and could not have seen Wecht's identification from

his location. The investigator's testimony did not even

contradict this, as Vincent's words were ambiguous. The investi-

gator said that Vincent reported that the suspects were all

brought out, but that does not necessarily mean he meant they

were brought out as a group as the investigator concluded. It

is equally plausible that Vincent meant only that he saw all six

of the truck's occupants. Although the lighting conditions were

 7 A-3693-15T2
less than ideal, they included street lights and a police

overhead light.

 It is undisputed that while at the station, Vincent was

shown two tire irons before he was asked the degree of his

confidence in the identification. This was inconsequential.

When initially shown the suspects, Vincent identified only three

of the six, and did so within seconds.

 Nor do we agree with defendant that the estimator variables,

particularly racial bias, stress, and weapon focus, reduce the

reliability of the identification in this case. See Henderson,

supra, 208 N.J. at 218, 261, 267. The record does not support

the argument. Just enumerating the factors that can have an

impact on an identification does not make it unreliable.

Accordingly, we consider the judge's denial of the motion to

have been proper.

 Affirmed.

 8 A-3693-15T2